**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | |
|---|---|
| Portsmouth Network Corporation<br><br>Plaintiff,<br><br>v.<br><br>Cisco Systems, Inc.<br><br>Defendant. | Civil Action No.<br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT

Plaintiff Portsmouth Network Corporation ("PNC" or "Plaintiff"), by its attorneys, demands a trial by jury on all issues so triable, and for its complaint against Defendant Cisco Systems, Inc. ("Cisco" or "Defendant") alleges as follows:

## NATURE OF THE ACTION

1. This is a civil action for patent infringement under the patent laws of the United States, Title 35, United States Code, Section 271, *et seq.*, involving the following United States Patents, collectively, "Asserted Patents," and seeking damages and injunctive relief as provided in 35 U.S.C. §§ 281 and 283–285.

| |
|---|
| U.S. Patent No. 7,035,279 (Exhibit 1, "'279 patent") |
| U.S. Patent No. 7,154,899 (Exhibit 2, "'899 patent") |
| U.S. Patent No. 7,420,922 (Exhibit 3, "'922 patent") |
| U.S. Patent No. 7,626,930 (Exhibit 4, "'930 patent") |
| U.S. Patent No. 7,773,508 (Exhibit 5, "'508 patent") |
| U.S. Patent No. 8,199,637 (Exhibit 6, "'637 patent") |

**THE PARTIES**

2. Plaintiff is a Delaware Corporation. Plaintiff is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business located at 35 Village Rd., Suite 100, Middleton, Massachusetts 01949. Plaintiff is the owner by assignment of the Asserted Patents.

3. Defendant Cisco Systems, Inc. ("Cisco" or "Defendant") is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business located at 170 West Tasman Dr., San Jose, California 95134, and has regular and established places of business throughout this District, including at least at 2250 East President George Bush Turnpike, Richardson, Texas 75082 and 2260 Chelsea Blvd. Allen, Texas 75013.

**JURISDICTION AND VENUE**

4. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1338(a).

5. On information and belief, jurisdiction and venue for this action are proper in this Judicial District.

6. Defendant is subject to this Court's personal jurisdiction consistent with the principles of due process and the Texas Long Arm Statute. Tex. Civ. Prac. & Rem. Code §§ 17.041, et seq.

7. This Court has personal jurisdiction over Defendant because Defendant, directly or through intermediaries, has committed acts within this District giving rise to this action and/or has established minimum contacts with this District such that the exercise of jurisdiction would not offend traditional notions of fair play and substantial justice. In particular, Defendant (i) has a regular and established place of business in the State of Texas and this District; (ii) has purposefully availed itself of the rights and benefits of the laws of the State of Texas and this

District; (iii) has done and is doing substantial business in the State of Texas and this District, directly or through intermediaries, both generally and, on information and belief, with respect to the allegations in this Complaint, including its one or more acts of infringement in the State of Texas and this District; (iv) has derived and derives substantial revenues from infringing acts occurring in the State of Texas and this District; (v) maintains continuous and systematic contacts in the State of Texas and this District; and/or (vi) places products alleged to be infringing in this Complaint in the stream of commerce with awareness that those products are sold, used, and offered for sale in the State of Texas and this District.

8. For example, on information and belief, Defendant maintains regular and established places of business in this District at 2250 East President George Bush Turnpike, Richardson, Texas 75082 and at 2260 Chelsea Blvd., Allen, Texas 75013 and has committed acts of infringement in this District.

9. Venue is proper in this District under 28 U.S.C. §§ 1391(b)-(c) and 1400(b) at least because Defendant has committed acts of infringement and is subject to personal jurisdiction in this District, including by way of maintaining regular and established places of business at 2250 East President George Bush Turnpike, Richardson, Texas 75082 and at 2260 Chelsea Blvd., Allen, Texas 75013. Defendant, through its own acts and/or through the acts of others acting as its agent, representative, or alter ego, makes, uses, sells, offers to sell, and/or imports infringing products within this District, has a continuing presence within this Judicial District, and has the requisite minimum contacts with this District such that venue is proper.

## CORRIGENT-SYSTEMS AND ITS PIONEERING TELECOMMUNICATIONS TECHNOLOGY

10. Orckit Communications Ltd. ("Orckit") was founded in 1990 by Izhak Tamir, and went public and was listed on the Nasdaq Stock Exchange in 1996.

11. Orckit was a pioneer in the telecommunications field, with sales of its telecommunications products exceeding $500M to various global telecommunications providers such as Deutche Telekom (Germany) and Kokusai Denshin Denwa International ("KDDI") (Japan). Between 1990 and 2000, Orckit became the market leader in asymmetric digital subscriber line (ADSL) technology.

12. In 2000, Orckit, through its subsidiary, Corrigent-Systems, Ltd. ("Corrigent-Systems"), started to develop new telecommunications products in the area of Ethernet switching and routing to optimize the transmission of voice and data over Internet Protocol (IP) telecommunications networks. At the time, the field of Ethernet switching and routing suffered many drawbacks. Early Ethernet technology used for sharing data in offices and enterprises was not easily suited to serve as the backbone for telecommunications service providers. For example, early Ethernet technology, used to connect a few computers in an office, could not meet the reliability and resiliency requirements of service providers, where a single connection may serve thousands of subscribers using different services in parallel. Nor could early Ethernet technology support real-time streaming, guarantee a minimum or even consistent delay, avoid back-up delay if a failure in the network occurs (e.g., a cable is damaged), or support the broadcasting of high-data-rate data to multiple end points required by, for example, television service providers.

13. Corrigent-Systems was a pioneer in overcoming these technology challenges. Between 2000 and 2010, Corrigent-Systems invested approximately $200M toward research and development of its new Ethernet switching and routing products. Corrigent-Systems identified and solved several obstacles in the field, and, as a result, was awarded hundreds of patents including the Asserted Patents, spanning over 70 patent families. Corrigent-Systems' product line revolutionized the telecommunications industry. For example, KDDI in Japan deployed a country-wide network of more than 2,000 Corrigent-Systems Ethernet switch products as early as 2005, a

time when Corrigent-Systems' competitors lagged significantly behind Corrigent-Systems and its innovative products and solutions.

14. The industry recognized Corrigent-Systems' innovation. In a research study by Bart Stuck & Michael Weingarten published in IEEE, Corrigent-Systems was ranked in the top twenty innovative companies among hundreds of public companies. Ex. 24, Stuck, B. and Weingarten, M., "How Venture Capital Thwarts Innovation," IEEE Spectrum (April 2005).

15. Plaintiff obtained all rights in the asserted patents.

## THE ASSERTED PATENTS

### U.S. Patent No. 7,035,279

16. Plaintiff is the lawful owner of all rights, title, and interest in U.S. Patent No. 7,035,279 ("'279 patent") entitled "Flow allocation in a ring topology," including the right to sue and recover for infringement thereof. A copy of the '279 patent is attached as Exhibit 1, which was duly and legally issued on April 25, 2006, naming Leon Bruckman as the inventor.

17. The '279 patent has 18 claims: 2 independent claims and 16 dependent claims.

18. The '279 patent presented novel and unconventional systems and methods concerning communications within a network, and specifically "for efficient allocation of resources for data flow in such networks." Ex. 1, '279 patent at 1:7–9. The inventions of the '279 patent, for example, provide "a method of data flow allocation that makes optimal use of resources that are available on different network links." *Id*. at 2:10–12. One embodiment of the inventions of the '279 patent is shown in FIG. 3, "a flow chart that schematically illustrates a method for assigning network resources to network nodes," reproduced below. *Id*. at 4:9–12.




*Id*. at Fig. 3; *see also id*. at 5:59–6:38.

19. The claims of the ’279 patent, including claim 1, recite at least these inventive concepts of the ’279 patent.

> 1. In a communication network that includes a plurality of nodes interconnected by links, the nodes including at least first and second nodes, a method for routing a data flow, comprising:
>
> allocating a respective number of quanta of one or more resources in the network to each of the nodes;
>
> receiving a request at the first node to use a portion of the resources so as to carry the data flow between the first and second nodes over one of a plurality of paths therebetween, each such path comprising a respective sequence of the links; and
>
> in response to the request:
>
> if the resources already allocated to the first node on one of the paths are sufficient, directing the data flow from the first node to the second node over the one of the paths without requesting additional resources; and
>
> if the resources already allocated to the first node are insufficient, performing the following steps:

> requesting an increase in an allocation to the first node of the requested resources;
>
> determining, for the links comprised by each of the paths, respective levels of use of the requested resources due to communications in progress over the network;
>
> selecting which of the paths is to carry the data flow responsive to the determined levels of use of the requested resources on the links comprised in each of the paths; and
>
> increasing the allocation of the resources to the first node on the selected path by a predetermined quantum.

*Id*. at claim 1.

20. The subject matter described and claimed in the ’279 patent, including the subject matter of claim 1, was an improvement in computer and communications functionality, performance, and efficiency, and was novel and not well-understood, routine, or conventional at the time of the ’279 patent.

21. Defendant had knowledge of the ’279 patent, including at least as of March 2017 when Orckit IP initiated discussions with Defendant about its patent portfolio, including the Asserted Patents, as described and alleged below, and at least as of the filing of the Complaint in *Portsmouth Network Corporation v. Cisco Systems, Inc.*, Civil Action No. 2:23cv441, Dkt. 1 (E.D. Tex. September 26, 2023) and at least as of the filing of this Complaint.

**U.S. Patent No. 7,154,899**

22. Plaintiff is the lawful owner of all rights, title, and interest in U.S. Patent No. 7,154,899 (“’899 patent”) entitled “Protecting the filtering database in virtual bridges,” including the right to sue and recover for infringement thereof. A copy of the ’899 patent is attached hereto as Exhibit 2, which was duly and legally issued on December 26, 2006, naming Uzi Khill as the inventor.

23. The ’899 patent has 14 claims: 4 independent claims and 10 dependent claims.

24. The ’899 patent presented novel systems and methods “to protect filtering databases used in virtual bridges, so as to prevent DOS attacks.” Ex. 2, ’899 patent at 4:7–9. The invention of the ’899 patent, for example, teaches a “learning process carried out by a virtual bridge [that] is limited to modifying only a potion of [a] shared filtering database in a period of time.” *Id*. at 4:15–17. By assigning each communication domain, a specific learning budget, the bridge or label-switched router can discard frames received “over budget from a VLAN or TLS domain with an unknown source MAC address” to prevent overloading of the database and ensure continued reliable operation under attack conditions. *Id*. at 4:21–29. One embodiment of the invention of the ’899 patent is shown in FIG. 2, “a flow chart that schematically illustrates a method for limiting the ability of a learning process to modify a shared filtering database,” reproduced below. *Id*. at 5:32–35.

FIG. 2



*Id*. at Fig. 2; *see also id*. at 6:10–47.

25. The claims of the ’899 patent, including claim 1 (reproduced below), recite at least these inventive concepts of the ’899 patent.

> 12. A method for budgeted learning of link information in a network, comprising:
>
> providing a database to contain the link information, for use by an entity connected to the network in transferring traffic over the network;
>
> setting a maximum rate for addition of entries to the database;
>
> responsive to the traffic on the network during a learning period, determining a new entry to be added to the database; and
>
> adding the new entry to the database only if the addition of the entries during the learning period has not exceeded the maximum rate,
>
> wherein setting the maximum rate comprises setting a budget of the entries to be added to the database during the learning period, and wherein adding the new entry comprises adding the new entry to the database and decrementing the budget responsive to the new entry.

*Id*. at claim 1.

26. The subject matter described and claimed in the ’899 patent, including the subject matter of claim 1, was an improvement in computer and communications functionality, performance, and efficiency, and was novel and not well-understood, routine, or conventional at the time of the ’899 patent.

27. On information and belief, Defendant had knowledge of the ’899 patent, including at least as of March 2017 when Orckit IP, LLC (“Orckit IP”)—a prior owner of the Asserted Patents—initiated discussions with Defendant about its patent portfolio, and at least as of the filing of this Complaint.

**U.S. Patent No. 7,420,922**

28. Plaintiff is the lawful owner of all rights, title, and interest in U.S. Patent No. 7,420,922 (“’922 patent”) entitled “Ring Network With Variable Rate,” including the right to sue

and recover for infringement thereof. A copy of the ’922 patent is attached as Exhibit 3, which was duly and legally issued on September 2, 2008, naming Leon Bruckman, Rafi Harel, and Muly Ilan as the inventors.

29. The ’922 patent has 18 claims: 2 independent claims and 16 dependent claims.

30. The ’922 patent presented novel and unconventional “methods and devices for upgrading and controlling network data rates.” Ex. 3, ’922 patent at 1:5–7. Among other improvements, the invention of the ’922 patent improves upon prior art “means for changing the data rate of individual virtual concatenated links.” *Id*. at 2:20–34. Embodiments of the ’922 patent, for example, teach “methods and systems that can be used to change the data rate of a network rapidly and with minimal disturbance of network operation. These methods are applicable particularly to ring networks, but may be adapted for use in other network topologies, as well, such as mesh and bus topologies.” *Id*. at 2:35–40. One embodiment of the invention of the ’922 patent is shown in FIG. 3, “a flow chart that schematically shows details of a method for performing a synchronized rate change in a communication network,” reproduced below. *Id*. at 6:15–18, Fig. 3.




*Id*. at Fig. 3; *see also id*. at 7:39–10:14.

31. The claims of the ’922 patent, including claim 1 (reproduced below), recite at least these inventive concepts of the ’922 patent.

> 1. A method for controlling a network that includes a manager node and a plurality of other nodes, which are interconnected by communication links, the method comprising:
>
> arranging the nodes to communicate with one another over segments of the network at multiple different data rates, comprising at least a first rate and a second rate, each segment connecting a different, respective pair of the nodes;
>
> exchanging validation messages between the manager node and the other nodes, while the nodes are configured to communicate at the first rate, in order to verify that the nodes can be reconfigured to communicate at the second rate;

> in response to the validation messages, sending a command message from the manager node to the other nodes, instructing the other nodes to execute a rate change; and
>
> in response to the command message, reconfiguring three or more of the other nodes substantially simultaneously to begin communicating at the second rate over a plurality of the segments in the network that interconnect the three or more of the other nodes.

*Id*. at claim 1.

32. The subject matter described and claimed in the ’922 patent, including the subject matter of claim 1 of the ’922 patent, was an improvement in computer and communications functionality, performance, and efficiency, and was novel and not well-understood, routine, or conventional at the time of ’922 patent.

33. On information and belief, Defendant had knowledge of the ’922 patent, including at least as of March 2017 when Orckit IP initiated discussions with Defendant about its patent portfolio, including the Asserted Patents, as described and alleged below, and at least as of the filing of this Complaint.

**U.S. Patent No. 7,626,930**

34. Plaintiff is the lawful owner of all rights, title, and interest in U.S. Patent No. 7,626,930 (“’930 patent”) entitled “Hash-based multi-homing,” including the right to sue and recover for infringement thereof. A copy of the ’930 patent is attached as Exhibit 4, which was duly and legally issued on December 1, 2009, naming Gideon Agmon, David Zelig, and Zvika Menahemi as the inventors.

35. The ’930 patent has 28 claims: 2 independent claims and 26 dependent claims.

36. The ’930 patent presented novel and unconventional systems and methods to “provide improved methods and systems for communicating between two endpoints via a layer-2 network using alternative communication paths.” Ex. 4, ’930 patent at 3:64–67. In some embodiments of the ’930 patent, “multiple ports, which typically reside in different network nodes

located between the endpoints, are defined as members of a multi-homing group (MHG)." *Id*. at 3:67–4:3. "Alternative communication paths between the endpoints are defined via the layer-2 network, with one path passing through each MHG member port," and "[e]ach MHG node (i.e., a node comprising an MHG member port) applies a hashing function to certain header fields of each frame it receives, in order to determine whether to forward or discard the frame." *Id*. at 4:3–6, 4:11–14. The '930 patent explains that, because "[a]ll MHG nodes use the same hashing function and apply the function to both incoming and outgoing frames," "layer-2 loops are prevented." *Id*. at 4:17–19. "Unlike some known methods and systems that use alternative communication paths, the methods and systems described herein provide hash-based, frame-by-frame protection and load balancing." *Id*. at 4:65–5:1. One embodiment of the '930 patent is shown in FIG. 2, "a flow chart that schematically illustrates a method for forwarding frames," reproduced below. *Id*. at 3:49–51, Fig. 2.

FIG. 2




*Id*. at Fig. 2; *see also id*. at 7:19–10:31.

37. The claims of the '930 patent, including claim 1 (reproduced below), recite at least these inventive concepts of the '930 patent.

> 1. A method for communication between first and second nodes via a communication network, the method comprising:
>
> assigning multiple communication ports in two or more network nodes between the first and second nodes to serve as member ports of a multi-homing group (MHG);
>
> associating each of the member ports with a different, respective communication path between the first and second nodes via the communication network;
>
> accepting at the two or more network nodes a frame transmitted from the first node to the second node, the frame having a header comprising header fields;
>
> selecting a single port from among the member ports over which to forward the frame by applying a hashing function to one or more of the header fields at each of the two or more network nodes; and
>
> forwarding the frame via the selected port over the respective communication path that is associated with the selected port.

*Id*. at claim 1.

38. The subject matter described and claimed in the ’930 patent, including the subject matter of claim 1 of the ’930 patent, was an improvement in computer and communications functionality, performance, and efficiency, and was novel and not well-understood, routine, or conventional at the time of ’930 patent.

39. On information and belief, Defendant had knowledge of the ’930 patent, including at least as of March 2017 when Orckit IP initiated discussions with Defendant about its patent portfolio, including the Asserted Patents, as described and alleged below, and at least as of the filing of this Complaint.

**U.S. Patent No. 7,773,508**

40. Plaintiff is the lawful owner of all rights, title, and interest in U.S. Patent No. 7,773,508 (“’508 patent”) entitled “Protecting the filtering database in virtual bridges,” including the right to sue and recover for infringement thereof. A copy of the ’508 patent is attached as Exhibit 5, which was duly and legally issued on August 10, 2010, naming Uzi Khill as the inventor.

41. The ’508 patent has 10 claims: 2 independent claims and 8 dependent claims.

42. The ’508 patent presented novel and unconventional systems and methods “to protect filtering databases used in virtual bridges, so as to prevent DOS attacks.” Ex. 5, ’508 patent at 4:7–9. The invention of the ’508 patent, for example, teaches a “learning process carried out by a virtual bridge [that] is limited to modifying only a portion of [a] shared filtering database in a period of time.” *Id.* at 4:12–13. By assigning each communication domain, a specific learning budget, the bridge or label-switched router can discard frames received “over budget from a VLAN or TLS domain with an unknown source MAC address” to prevent overloading of the database and ensure continued reliable operation under attack conditions. *Id.* at 4:24–32. One embodiment of the invention of the ’508 patent is shown in FIG. 2, “a flow chart that schematically illustrates a method for limiting the ability of a learning process to modify a shared filtering database,” reproduced below. *Id.* at 5:32–35.

FIG. 2




*Id.* at Fig. 2; *see also id.* at 6:24–45.

43. The claims of the '508 patent, including claim 1 (reproduced below), recite at least these inventive concepts of the '508 patent.

> 1. A method for budgeted learning of link information in a network, comprising:
>
> providing a database to contain the link information, for use by an entity connected to the network in transferring traffic over the network;
>
> setting a maximum rate for addition of entries to the database;
>
> responsive to the traffic on the network during a learning period, determining a new entry to be added to the database;
>
> setting a budget, comprising allocating a number of entries to be added by the entity, such that a sum of the number of entries added during the learning period is less than or equal to a total number of the entries in the database; and
>
> adding the new entry to the database only if the addition of the entries during the learning period has not exceeded the maximum rate.

*Id*. at claim 1.

44. The subject matter described and claimed in the '508 patent, including the subject matter of claim 1 of the '508 patent, was an improvement in computer and communications functionality, performance, and efficiency, and was novel and not well-understood, routine, or conventional at the time of '508 patent.

45. On information and belief, Defendant had knowledge of the '508 patent, including at least as of March 2017 when Orckit IP initiated discussions with Defendant about its patent portfolio, including the Asserted Patents, as described and alleged below, and at least as of the filing of this Complaint.

**U.S. Patent No. 8,199,637**

46. Plaintiff is the lawful owner of all rights, title, and interest in U.S. Patent No. 8,199,637 ("'637 patent") entitled "VPLS remote failure indication," including the right to sue and recover for infringement thereof. A copy of the '637 patent is attached hereto as Exhibit 6, which

was duly and legally issued on June 12, 2012, naming Leon Bruckman, David Zelig, Ronen Solomon, Ophir Fuchs, and Alex Levit as the inventors.

47. The ’637 patent has 25 claims: 2 independent claims and 23 dependent claims.

48. The ’637 patent presented novel and unconventional devices and methods for “handling communication failures in a network.” Ex. 6, ’637 patent at Abstract; *id*. at claim 1. The inventions of the ’637 patent, for example, “provide methods for rapidly initiating the diversion of traffic from the failed primary topology to the backup topology.” *Id.* at 4:17–19. The rapid diversion can be accomplished by a node detecting a local failure in the primary topology, propagating failure information to other nodes, and deactivating the physical layers of the primary set links connected to the node. *See id.* at 4:19–25. One embodiment of the inventions of the ’637 patent is shown in FIG. 3, “a flow chart that schematically illustrates a method for protecting network traffic,” reproduced below. *Id.* at 7:40–2.

FIG. 3




*Id*. at Fig. 3; *see also id*. at 7:40–10:20.

49. The claims of the ’637 patent, including claim1 (reproduced below), recite at least these inventive concepts of the ’637 patent.

> 1. A method for handling a communication failure in a network, comprising:
>
> provisioning different first and second instances of a multipoint-to-multipoint (MP-MP) communication service over respective first and second alternative sets of links that connect a plurality of endpoints in the network, each of the sets traversing a plurality of network nodes, which provide physical layer resources for operating the links;
>
> providing the communication service to the endpoints over the first set of links using the first instance;
>
> upon detecting a failure in the first set of links by a detecting node of the plurality of network nodes;
>
>> propagating failure information by the detecting node to each node of the other nodes of the plurality of network nodes traversed by the first set of links;
>>
>> for each node of the other nodes of the plurality of network nodes traversed by the first set of links;
>>
>>> receiving the failure information; and
>>>
>>> deactivating a physical layer of the first set of links connected thereto, thereby causing a loss of connectivity in the first set of links; and
>
> responsively to sensing the loss of connectivity, resuming the communication service over the second instance by automatically transferring communication among the endpoints to the second set of links.

*Id*. at claim 1.

50. The subject matter described and claimed in the ’637 patent, including the subject matter of claim 1, was an improvement in computer and communications functionality, performance, and efficiency, and was novel and not well-understood, routine, or conventional at the time of the ’637 patent.

51. On information and belief, Defendant had knowledge of the ’637 patent, including at least as of March 2017 when Orckit IP, LLC (“Orckit IP”)—a prior owner of the Asserted

Patents—initiated discussions with Defendant about its patent portfolio, including the Asserted Patents, as described and alleged below, and at least as of the filing of the Complaint in *Portsmouth Network Corporation v. Cisco Systems, Inc.*, Civil Action No. 2:23cv441, Dkt. 1 (E.D. Tex. September 26, 2023) and at least as of the filing of this Complaint.

**BACKGROUND OF DEFENDANT'S INFRINGING CONDUCT**

52. Defendant Cisco Systems Inc. is a networking hardware company that makes, uses, sells, offers for sale in the United States, and/or imports into the United States, or has otherwise made, used, sold, offered for sale in the United States, and/or imported in the United States, routers and switches that infringe the Asserted Patents.

53. Defendant's products that infringe the Asserted Patents (collectively, "Accused Products") include the following:

| Accused Products | Asserted Patents |
|---|---|
| Cisco ASR 9000 Series Routers | '637 patent |
| Cisco Catalyst 9000 Switches | '279 patent, '922 patent, '930 patent, '637 patent |
| Cisco Nexus 9000 Switches | '899 patent, '508 patent |

The above-listed Accused Products are non-limiting. Additional products may infringe the Asserted Patents, and the above-listed Accused Products may infringe additional patents or other Asserted Patents.

54. Defendant infringes and continues to infringe the Asserted Patents by making, using, selling, offering to sell, and/or importing, without license or authority, the Accused Products as alleged herein.

55. Comparison of claims of the Asserted Patents to the Accused Products are attached as Exhibit 7 ('279 patent), Exhibit 8 ('899 patent), Exhibit 9 ('922 patent), Exhibit 10 ('930 patent), Exhibit 11 ('508 patent), and Exhibit 12 ('637 patent) are incorporated herein by reference.

56. Defendant markets, advertises, offers for sale, and/or otherwise promotes the Accused Products and, on information and belief, does so to induce, encourage, instruct, and aid one or more persons in the United States to make, use, sell, and/or offer to sell their Accused Products. For example, Defendant advertises, offers for sale, and/or otherwise promotes the Accused Products on its website. Defendant further publishes and distributes data sheets, manuals, and guides for the Accused Products. *See, e.g.*, Ex. 13, "Multicast Configuration Guide for Cisco ASR 9000 Series Routers, IOS XR Release 6.4.x" (available at https://www.cisco.com/c/en/us/td/docs/routers/asr9000/software/asr9k-r6-4/multicast/configuration/guide/b-multicast-cg-asr9000-64x.html); Ex. 14, "Cisco ASR 9000 Series Aggregation Services Router L2VPN and Ethernet Services Configuration Guide, Release 6.1.x" (available at https://www.cisco.com/c/en/us/td/docs/routers/asr9000/software/asr9k_r6-1/lxvpn/configuration/guide/b-l2vpn-cg-asr9k-61x.pdf); Ex. 15, "Cisco Catalyst 9000 Switching Platforms: QoS and Queuing" (available at https://www.cisco.com/c/en/us/products/collateral/switches/catalyst-9000/white-paper-c11-742388.html); Ex. 16, "Cisco Nexus 9000 Series NX-OS System Management Configuration Guide, Release 10.4(x)" (available at https://www.cisco.com/c/en/us/td/docs/switches/datacenter/nexus9000/sw/104x/config-guides/cisco-nexus-9000-series-nx-os-system-management-configuration-guide-release-104x/m-configuring-mac-move.html); Ex. 17, "Catalyst 9300 Stackwise System Architecture White Paper" (available at https://www.cisco.com/c/en/us/products/collateral/switches/catalyst-9300-series-switches/white-paper-c11-741468.html); Ex. 18, "Stacking and High Availability

Configuration Guide, Cisco IOS XE 26.x.x (Catalyst 9300 Switches)" (available at https://www.cisco.com/c/en/us/td/docs/switches/lan/catalyst9300/software/release/26-x/configuration_guide/stck_mgr_ha/b_26x_stck_mgr_ha_9300_cg.pdf); Ex. 19, "Cisco Catalyst 9300 Series Switches Data Sheet" (available at https://www.cisco.com/c/en/us/products/collateral/switches/catalyst-9300-series-switches/nb-06-cat9300-ser-data-sheet-cte-en.html); Ex. 20, "Command Reference, Cisco IOS XE 26.x.x (Catalyst 9300 Switches)" (available at https://www.cisco.com/c/en/us/td/docs/switches/lan/catalyst9300/software/release/26-x/command_reference/b_26x_9300_cr.pdf); Ex. 21, "Stack Manager and High Availability Commands" (available at https://www.cisco.com/c/en/us/td/docs/switches/lan/catalyst9300/software/release/17-15/command_reference/b_1715_9300_cr/stack_manager_and_high_availability_commands.pdf); Ex. 22, "BGP EVPN VXLAN Configuration Guide, Cisco IOS XE Cupertino 17.8.x (Catalyst 9400 Switches)" (available at https://www.cisco.com/c/en/us/td/docs/switches/lan/catalyst9400/software/release/17-8/configuration_guide/vxlan/b_178_bgp_evpn_vxlan_9400_cg/configuring_multi_homing_in_bgp_evpn_vxlan_fabric.html); Ex. 23, "High Availability Configuration Guide, Cisco IOS XE 17.18.x (Catalyst 9500 Switches)" (available at https://www.cisco.com/c/en/us/td/docs/switches/lan/catalyst9500/software/release/17-18/configuration_guide/ha/b_1718_ha_9500_cg/esi-mh-in-non-fabric-deployments.html). Therein, Defendant describes and touts the use of the subject matter claimed in the Asserted Patents, as described and alleged below.

**BACKGROUND OF DEFENDANT'S KNOWLEDGE OF THE INVENTIONS DESCRIBED AND CLAIMED IN THE ASSERTED PATENTS**

57. On information and belief, Defendant has had knowledge of the Asserted Patents and the inventions described and claimed therein since at least around March 2017, when Orckit IP—a prior owner of the Asserted Patents—initiated discussions with Defendant about the Asserted Patents and the Accused Products.

58. On March 20, 2017, Orckit IP sent letter to Defendant concerning its "Patent Portfolio," wherein Orckit IP notified Cisco of each of the Asserted Patents. Ex. 25, 2017-03-20, Hallaj Ltr. In that letter, Orckit IP notified Defendant that it "owns a patent portfolio related to certain communications technologies developed by Orckit Communications Ltd. and Corrigent Systems Ltd. (f/k/a Orckit-Corrigent Ltd.). Orckit IP's patent portfolio includes over 100 patents and pending patent applications. One or more of these patents and patent applications may be of interest to Cisco and require your company's attention." *Id*. Orckit IP further identified several "Cisco switches and routers," including the Cisco Blade Switches and Cisco's Catalyst Series Switches, which are accused of infringing the Asserted Patents in this case. *Id*. Orckit IP concluded: "Accordingly, Cisco may be interested in obtaining a license to (or acquiring) the '983 Patent and/or other patent assets from Orckit IP's patent portfolio." *Id*. Orckit IP's letter to Cisco attached a list of patents, including the asserted patents in this case. *Id.*

59. On April 10, 2017, Defendant responded by letter and requested additional information. Ex. 26, 2017-04-10, Showalter Ltr.

60. On July 11, 2018, Orckit IP sent a second notice letter to Defendant, again concerning its "Patent Portfolio." Ex. 27, 2018-07-11, Hallaj Ltr. Orckit IP again notified Defendant that Orckit IP's patent portfolio relates to Defendant's switch and router products. *Id*. Orckit IP concluded: "Accordingly, Cisco may be interested in obtaining a license to (or acquiring)

the ‘821 Patent, the ‘928 Patent, and/or other patent assets from Orckit IP’s patent portfolio (in addition to the ‘983 Patent, discussed above).” *Id*.

61. On July 25, 2018, Defendant responded by letter and requested additional information. Ex. 28, 2018-07-25, Walters Ltr.

62. On November 20, 2018, Orckit IP identified additional patents within its patent portfolio, including the asserted ’637 patent. Ex. 29, 2018-11-20 Wan Email. Orckit IP offered to send Defendant exemplary “evidence of use charts” relating to any of the patents, including the asserted ’637 patent. *Id*.

63. Defendant has also had knowledge of the Asserted Patents and the inventions described and claimed therein since at least as of the filing of the original Complaint in this case.

**COUNT I – INFRINGEMENT OF U.S. PATENT NO. 7,035,279**

64. Plaintiff incorporates by reference the allegations contained in paragraphs 1–63.

65. Defendant has made, used, offered for sale, sold, and/or imported products, including at least the Accused Products, that infringe, either literally or under the doctrine of equivalents, one or more claims of the ’279 patent in violation of 35 U.S.C. § 271(a), including claim 1. A comparison of claim 1 of the ’279 patent to the Accused Products is attached as Exhibit 7, which is incorporated herein by reference.

66. On information and belief, with knowledge of the ’279 patent, Defendant has actively induced and continues to induce the direct infringement of one or more claims of the ’279 patent, including claim 1, in violation of 35 U.S.C. § 271(b) by its customers and/or end users of their products, including at least the Accused Products, by selling, providing support for, providing instructions for use of, and/or otherwise encouraging its customers and/or end-users to directly infringe, either literally and/or under the doctrine of equivalents, one or more claims of the ’279

patent, including claim 1, with the intent to encourage those customers and/or end-users to infringe the ’279 patent.

67. By way of example, on information and belief, Defendant actively induces infringement of the ’279 patent by encouraging, instructing, and aiding one or more persons in the United States, including but not limited to customers and end users who purchase, test, operate, and use Defendant’s products, including at least the Accused Products, to make, use, sell, and/or offer to sell Defendant’s products, including at least the Accused Products, in a manner that infringes at least one claim of the ’279 patent, including claim 1. For example, as described above, Defendant actively markets, advertises, offers for sale, and/or otherwise promotes its Accused Products on its website. Defendant further actively markets, advertises, offers for sale, and/or otherwise promotes its Accused Products by publishing and distributing data sheets, manuals, and guides for the Accused Products. Therein, Defendant describes and touts the use of the subject matter claimed in the ’279 patent.

68. On information and belief, with knowledge of the ’279 patent, Defendant also contributes to the infringement of one or more claims of the ’279 patent in violation of 35 U.S.C. § 271(c), including claim 1, by making, using, offering to sell or selling and/or importing a patented component or material constituting a material part of the invention, including at least the Accused Products, knowing the same to be especially made or especially adapted for use in an infringement and not a staple article or commodity of commerce suitable for substantial non- infringing use. This is evidenced by, among other things, the design, configuration, and functionality of Defendant’s Accused Products, which are especially made or especially adapted for use in an infringement of the ’279 patent when used for their normal and intended purpose. This is also evidenced by, among other things, Defendant’s informational and promotional materials described above, which describe the normal use and intended purpose of the Accused Products and

demonstrate that the Accused Products are especially made or especially adapted for a use that infringes the ’279 patent.

69. As a result of Defendant’s inducement of, and/or contribution to, infringement, its customers and/or end users made, used, sold, or offered for sale, and continue to make, use, sell, or offer to sell Defendant’s products, including the Accused Products, in ways that directly infringe one or more claims of the ’279 patent, including claim 1. On information and belief, Defendant had actual knowledge of its customers’ and/or end users’ direct infringement at least by virtue of its sales, instruction, and/or otherwise promotion of Defendant’s products, including the Accused Products, at least as of March 2017 when Orckit IP initiated discussions with Defendant about its patent portfolio, including the Asserted Patents, and no later than the filing of the Complaint in *Portsmouth Network Corporation v. Cisco Systems, Inc.*, Civil Action No. 2:23cv441, Dkt. 1 (E.D. Tex. September 26, 2023) and at least no later than the filing of this Complaint.

70. On information and belief, with knowledge of the ’279 patent, Defendant has willfully, deliberately, and intentionally infringed the ’279 patent, and continues to willfully, deliberately, and intentionally infringe the ’279 patent. On information and belief, Defendant had actual knowledge of the ’279 patent and Defendant’s infringement of the ’279 patent as set forth above. On information and belief, after acquiring that knowledge, Defendant directly and indirectly infringed the ’279 patent as set forth above. On information and belief, Defendant knew or should have known that its conduct amounted to infringement of the ’279 patent at least because Plaintiff notified Defendant of the ’279 patent and its infringement of the ’279 patent as set forth above.

71. On information and belief, Defendant will continue to infringe the ’279 patent unless and until it is enjoined by this Court. Defendant, by way of its infringing activities, has caused and continues to cause Plaintiff to suffer damages in an amount to be determined, and has

caused and is causing Plaintiff irreparable harm. Plaintiff has no adequate remedy at law against Defendant's acts of infringement and, unless it is enjoined from its infringement of the '279 patent, Plaintiff will continue to suffer irreparable harm.

72. Plaintiff is entitled to recover from Defendant damages at least in an amount adequate to compensate for its infringement of the '279 patent, which amount has yet to be determined, together with interest and costs fixed by the Court.

73. Plaintiff has complied with 35 U.S.C. § 287 with respect to the '279 patent.

**COUNT II – INFRINGEMENT OF U.S. PATENT NO. 7,154,899**

74. Plaintiff incorporates by reference the allegations contained in paragraphs 1–73.

75. Defendant has made, used, offered for sale, sold, and/or imported products, including at least the Accused Products, that infringe, either literally or under the doctrine of equivalents, one or more claims of the '899 patent in violation of 35 U.S.C. § 271(a), including claim 1. A comparison of claim 1 of the '899 patent to the Accused Products is attached as Exhibit 8, which is incorporated herein by reference.

76. On information and belief, with knowledge of the '899 patent, Defendant has actively induced and continues to induce the direct infringement of one or more claims of the '899 patent, including claim 1, in violation of 35 U.S.C. § 271(b) by its customers and/or end users of their products, including at least the Accused Products, by selling, providing support for, providing instructions for use of, and/or otherwise encouraging its customers and/or end-users to directly infringe, either literally and/or under the doctrine of equivalents, one or more claims of the '899 patent, including claim 1, with the intent to encourage those customers and/or end-users to infringe the '899 patent.

77. By way of example, on information and belief, Defendant actively induces infringement of the '899 patent by encouraging, instructing, and aiding one or more persons in the

United States, including but not limited to customers and end users who purchase, test, operate, and use Defendant's products, including at least the Accused Products, to make, use, sell, and/or offer to sell Defendant's products, including at least the Accused Products, in a manner that infringes at least one claim of the '899 patent, including claim 1. For example, as described above, Defendant actively markets, advertises, offers for sale, and/or otherwise promotes its Accused Products on its website. Defendant further actively markets, advertises, offers for sale, and/or otherwise promotes its Accused Products by publishing and distributing data sheets, manuals, and guides for the Accused Products. Therein, Defendant describes and touts the use of the subject matter claimed in the '899 patent.

78. On information and belief, with knowledge of the '899 patent, Defendant also contributes to the infringement of one or more claims of the '899 patent in violation of 35 U.S.C. § 271(c), including claim 1, by making, using, offering to sell or selling and/or importing a patented component or material constituting a material part of the invention, including at least the Accused Products, knowing the same to be especially made or especially adapted for use in an infringement and not a staple article or commodity of commerce suitable for substantial non- infringing use. This is evidenced by, among other things, the design, configuration, and functionality of Defendant's Accused Products, which are especially made or especially adapted for use in an infringement of the '899 patent when used for their normal and intended purpose. This is also evidenced by, among other things, Defendant's informational and promotional materials described above, which describe the normal use and intended purpose of the Accused Products and demonstrate that the Accused Products are especially made or especially adapted for a use that infringes the '899 patent.

79. As a result of Defendant's inducement of, and/or contribution to, infringement, its customers and/or end users made, used, sold, or offered for sale, and continue to make, use, sell,

or offer to sell Defendant's products, including the Accused Products, in ways that directly infringe one or more claims of the '899 patent, including claim 1. On information and belief, Defendant had actual knowledge of its customers' and/or end users' direct infringement at least by virtue of its sales, instruction, and/or otherwise promotion of Defendant's products, including the Accused Products, at least as of March 2017 when Orckit IP initiated discussions with Defendant about its patent portfolio, including the Asserted Patents, and at least no later than the filing of this Complaint.

80. On information and belief, with knowledge of the '899 patent, Defendant has willfully, deliberately, and intentionally infringed the '899 patent, and continues to willfully, deliberately, and intentionally infringe the '899 patent. On information and belief, Defendant had actual knowledge of the '899 patent and Defendant's infringement of the '899 patent as set forth above. On information and belief, after acquiring that knowledge, Defendant directly and indirectly infringed the '899 patent as set forth above. On information and belief, Defendant knew or should have known that its conduct amounted to infringement of the '899 patent at least because Plaintiff notified Defendant of the '899 patent and its infringement of the '899 patent as set forth above.

81. On information and belief, Defendant will continue to infringe the '899 patent unless and until it is enjoined by this Court. Defendant, by way of its infringing activities, has caused and continues to cause Plaintiff to suffer damages in an amount to be determined, and has caused and is causing Plaintiff irreparable harm. Plaintiff has no adequate remedy at law against Defendant's acts of infringement and, unless it is enjoined from its infringement of the '899 patent, Plaintiff will continue to suffer irreparable harm.

82. Plaintiff is entitled to recover from Defendant damages at least in an amount adequate to compensate for its infringement of the ’899 patent, which amount has yet to be determined, together with interest and costs fixed by the Court.

83. Plaintiff has complied with 35 U.S.C. § 287 with respect to the ’899 patent.

## COUNT III – INFRINGEMENT OF U.S. PATENT NO. 7,420,922

84. Plaintiff incorporates by reference the allegations contained in paragraphs 1–83.

85. Defendant has made, used, offered for sale, sold, and/or imported products, including at least the Accused Products, that infringe, either literally or under the doctrine of equivalents, one or more claims of the ’922 patent in violation of 35 U.S.C. § 271(a), including claim 1. A comparison of claim 1 of the ’922 patent to the Accused Products is attached as Exhibit 9, which is incorporated herein by reference.

86. On information and belief, with knowledge of the ’922 patent, Defendant has actively induced and continues to induce the direct infringement of one or more claims of the ’922 patent, including claim 1, in violation of 35 U.S.C. § 271(b) by its customers and/or end users of their products, including at least the Accused Products, by selling, providing support for, providing instructions for use of, and/or otherwise encouraging its customers and/or end-users to directly infringe, either literally and/or under the doctrine of equivalents, one or more claims of the ’922 patent, including claim 1, with the intent to encourage those customers and/or end-users to infringe the ’922 patent.

87. By way of example, on information and belief, Defendant actively induces infringement of the ’922 patent by encouraging, instructing, and aiding one or more persons in the United States, including but not limited to customers and end users who purchase, test, operate, and use Defendant’s products, including at least the Accused Products, to make, use, sell, and/or offer to sell Defendant’s products, including at least the Accused Products, in a manner that

infringes at least one claim of the ’922 patent, including claim 1. For example, as described above, Defendant actively markets, advertises, offers for sale, and/or otherwise promotes its Accused Products on its website. Defendant further actively markets, advertises, offers for sale, and/or otherwise promotes its Accused Products by publishing and distributing data sheets, manuals, and guides for the Accused Products. Therein, Defendant describes and touts the use of the subject matter claimed in the ’922 patent.

88. On information and belief, with knowledge of the ’922 patent, Defendant also contributes to the infringement of one or more claims of the ’922 patent in violation of 35 U.S.C. § 271(c), including claim 1, by making, using, offering to sell or selling and/or importing a patented component or material constituting a material part of the invention, including at least the Accused Products, knowing the same to be especially made or especially adapted for use in an infringement and not a staple article or commodity of commerce suitable for substantial non- infringing use. This is evidenced by, among other things, the design, configuration, and functionality of Defendant’s Accused Products, which are especially made or especially adapted for use in an infringement of the ’922 patent when used for their normal and intended purpose. This is also evidenced by, among other things, Defendant’s informational and promotional materials described above, which describe the normal use and intended purpose of the Accused Products and demonstrate that the Accused Products are especially made or especially adapted for a use that infringes the ’922 patent.

89. As a result of Defendant’s inducement of, and/or contribution to, infringement, its customers and/or end users made, used, sold, or offered for sale, and continue to make, use, sell, or offer to sell Defendant’s products, including the Accused Products, in ways that directly infringe one or more claims of the ’922 patent, including claim 1. On information and belief, Defendant had actual knowledge of its customers’ and/or end users’ direct infringement at least by virtue of

its sales, instruction, and/or otherwise promotion of Defendant's products, including the Accused Products, at least as of March 2017 when Orckit IP initiated discussions with Defendant about its patent portfolio, including the Asserted Patents, and no later than the filing of this Complaint.

90. On information and belief, with knowledge of the '922 patent, Defendant has willfully, deliberately, and intentionally infringed the '922 patent, and continues to willfully, deliberately, and intentionally infringe the '922 patent. On information and belief, Defendant had actual knowledge of the '922 patent and Defendant's infringement of the '922 patent as set forth above. On information and belief, after acquiring that knowledge, Defendant directly and indirectly infringed the '922 patent as set forth above. On information and belief, Defendant knew or should have known that its conduct amounted to infringement of the '922 patent at least because Plaintiff notified Defendant of the '922 patent and its infringement of the '922 patent as set forth above.

91. On information and belief, Defendant will continue to infringe the '922 patent unless and until it is enjoined by this Court. Defendant, by way of its infringing activities, has caused and continues to cause Plaintiff to suffer damages in an amount to be determined, and has caused and is causing Plaintiff irreparable harm. Plaintiff has no adequate remedy at law against Defendant's acts of infringement and, unless it is enjoined from its infringement of the '922 patent, Plaintiff will continue to suffer irreparable harm.

92. Plaintiff is entitled to recover from Defendant damages at least in an amount adequate to compensate for its infringement of the '922 patent, which amount has yet to be determined, together with interest and costs fixed by the Court.

93. Plaintiff has complied with 35 U.S.C. § 287 with respect to the '922 patent.

**COUNT IV – INFRINGEMENT OF U.S. PATENT NO. 7,626,930**

94. Plaintiff incorporates by reference the allegations contained in paragraphs 1–93.

95. Defendant has made, used, offered for sale, sold, and/or imported products, including at least the Accused Products, that infringe, either literally or under the doctrine of equivalents, one or more claims of the ’930 patent in violation of 35 U.S.C. § 271(a), including claim 1. A comparison of claim 1 of the ’930 patent to the Accused Products is attached as Exhibit 10, which is incorporated herein by reference.

96. On information and belief, with knowledge of the ’930 patent, Defendant has actively induced and continues to induce the direct infringement of one or more claims of the ’930 patent, including claim 1, in violation of 35 U.S.C. § 271(b) by its customers and/or end users of their products, including at least the Accused Products, by selling, providing support for, providing instructions for use of, and/or otherwise encouraging its customers and/or end-users to directly infringe, either literally and/or under the doctrine of equivalents, one or more claims of the ’930 patent, including claim 1, with the intent to encourage those customers and/or end-users to infringe the ’930 patent.

97. By way of example, on information and belief, Defendant actively induces infringement of the ’930 patent by encouraging, instructing, and aiding one or more persons in the United States, including but not limited to customers and end users who purchase, test, operate, and use Defendant’s products, including at least the Accused Products, to make, use, sell, and/or offer to sell Defendant’s products, including at least the Accused Products, in a manner that infringes at least one claim of the ’930 patent, including claim 1. For example, as described above, Defendant actively markets, advertises, offers for sale, and/or otherwise promotes its Accused Products on its website. Defendant further actively markets, advertises, offers for sale, and/or otherwise promotes its Accused Products by publishing and distributing data sheets, manuals, and guides for the Accused Products. Therein, Defendant describes and touts the use of the subject matter claimed in the ’930 patent.

98. On information and belief, with knowledge of the ’930 patent, Defendant also contributes to the infringement of one or more claims of the ’930 patent in violation of 35 U.S.C. § 271(c), including claim 1, by making, using, offering to sell or selling and/or importing a patented component or material constituting a material part of the invention, including at least the Accused Products, knowing the same to be especially made or especially adapted for use in an infringement and not a staple article or commodity of commerce suitable for substantial non- infringing use. This is evidenced by, among other things, the design, configuration, and functionality of Defendant’s Accused Products, which are especially made or especially adapted for use in an infringement of the ’930 patent when used for their normal and intended purpose. This is also evidenced by, among other things, Defendant’s informational and promotional materials described above, which describe the normal use and intended purpose of the Accused Products and demonstrate that the Accused Products are especially made or especially adapted for a use that infringes the ’930 patent.

99. As a result of Defendant’s inducement of, and/or contribution to, infringement, its customers and/or end users made, used, sold, or offered for sale, and continue to make, use, sell, or offer to sell Defendant’s products, including the Accused Products, in ways that directly infringe one or more claims of the ’930 patent, including claim 1. On information and belief, Defendant had actual knowledge of its customers’ and/or end users’ direct infringement at least by virtue of its sales, instruction, and/or otherwise promotion of Defendant’s products, including the Accused Products, at least as of March 2017 when Orckit IP initiated discussions with Defendant about its patent portfolio, including the Asserted Patents, and no later than the filing of this Complaint.

100. On information and belief, with knowledge of the ’930 patent, Defendant has willfully, deliberately, and intentionally infringed the ’930 patent, and continues to willfully, deliberately, and intentionally infringe the ’930 patent. On information and belief, Defendant had

actual knowledge of the ’930 patent and Defendant’s infringement of the ’930 patent as set forth above. On information and belief, after acquiring that knowledge, Defendant directly and indirectly infringed the ’930 patent as set forth above. On information and belief, Defendant knew or should have known that its conduct amounted to infringement of the ’930 patent at least because Plaintiff notified Defendant of the ’930 patent and its infringement of the ’930 patent as set forth above.

101. On information and belief, Defendant will continue to infringe the ’930 patent unless and until it is enjoined by this Court. Defendant, by way of its infringing activities, has caused and continues to cause Plaintiff to suffer damages in an amount to be determined, and has caused and is causing Plaintiff irreparable harm. Plaintiff has no adequate remedy at law against Defendant’s acts of infringement and, unless it is enjoined from its infringement of the ’930 patent, Plaintiff will continue to suffer irreparable harm.

102. Plaintiff is entitled to recover from Defendant damages at least in an amount adequate to compensate for its infringement of the ’930 patent, which amount has yet to be determined, together with interest and costs fixed by the Court.

103. Plaintiff has complied with 35 U.S.C. § 287 with respect to the ’930 patent.

## COUNT V – INFRINGEMENT OF U.S. PATENT NO. 7,773,508

104. Plaintiff incorporates by reference the allegations contained in paragraphs 1–103.

105. Defendant has made, used, offered for sale, sold, and/or imported products, including at least the Accused Products, that infringe, either literally or under the doctrine of equivalents, one or more claims of the ’508 patent in violation of 35 U.S.C. § 271(a), including claim 1. A comparison of claim 1 of the ’508 patent to the Accused Products is attached as Exhibit 11, which is incorporated herein by reference.

106. On information and belief, with knowledge of the ’508 patent, Defendant has actively induced and continues to induce the direct infringement of one or more claims of the ’508 patent, including claim 1, in violation of 35 U.S.C. § 271(b) by its customers and/or end users of their products, including at least the Accused Products, by selling, providing support for, providing instructions for use of, and/or otherwise encouraging its customers and/or end-users to directly infringe, either literally and/or under the doctrine of equivalents, one or more claims of the ’508 patent, including claim 1, with the intent to encourage those customers and/or end-users to infringe the ’508 patent.

107. By way of example, on information and belief, Defendant actively induces infringement of the ’508 patent by encouraging, instructing, and aiding one or more persons in the United States, including but not limited to customers and end users who purchase, test, operate, and use Defendant’s products, including at least the Accused Products, to make, use, sell, and/or offer to sell Defendant’s products, including at least the Accused Products, in a manner that infringes at least one claim of the ’508 patent, including claim 1. For example, as described above, Defendant actively markets, advertises, offers for sale, and/or otherwise promotes its Accused Products on its website. Defendant further actively markets, advertises, offers for sale, and/or otherwise promotes its Accused Products by publishing and distributing data sheets, manuals, and guides for the Accused Products. Therein, Defendant describes and touts the use of the subject matter claimed in the ’508 patent.

108. On information and belief, with knowledge of the ’508 patent, Defendant also contributes to the infringement of one or more claims of the ’508 patent in violation of 35 U.S.C. § 271(c), including claim 1, by making, using, offering to sell or selling and/or importing a patented component or material constituting a material part of the invention, including at least the Accused Products, knowing the same to be especially made or especially adapted for use in an infringement

and not a staple article or commodity of commerce suitable for substantial non- infringing use. This is evidenced by, among other things, the design, configuration, and functionality of Defendant's Accused Products, which are especially made or especially adapted for use in an infringement of the '508 patent when used for their normal and intended purpose. This is also evidenced by, among other things, Defendant's informational and promotional materials described above, which describe the normal use and intended purpose of the Accused Products and demonstrate that the Accused Products are especially made or especially adapted for a use that infringes the '508 patent.

109. As a result of Defendant's inducement of, and/or contribution to, infringement, its customers and/or end users made, used, sold, or offered for sale, and continue to make, use, sell, or offer to sell Defendant's products, including the Accused Products, in ways that directly infringe one or more claims of the '508 patent, including claim 1. On information and belief, Defendant had actual knowledge of its customers' and/or end users' direct infringement at least by virtue of its sales, instruction, and/or otherwise promotion of Defendant's products, including the Accused Products, at least as of March 2017 when Orckit IP initiated discussions with Defendant about its patent portfolio, including the Asserted Patents, and at least no later than the filing of this Complaint.

110. On information and belief, with knowledge of the '508 patent, Defendant has willfully, deliberately, and intentionally infringed the '508 patent, and continues to willfully, deliberately, and intentionally infringe the '508 patent. On information and belief, Defendant had actual knowledge of the '508 patent and Defendant's infringement of the '508 patent as set forth above. On information and belief, after acquiring that knowledge, Defendant directly and indirectly infringed the '508 patent as set forth above. On information and belief, Defendant knew or should have known that its conduct amounted to infringement of the '508 patent at least because

Plaintiff notified Defendant of the ’508 patent and its infringement of the ’508 patent as set forth above.

111. On information and belief, Defendant will continue to infringe the ’508 patent unless and until it is enjoined by this Court. Defendant, by way of its infringing activities, has caused and continues to cause Plaintiff to suffer damages in an amount to be determined, and has caused and is causing Plaintiff irreparable harm. Plaintiff has no adequate remedy at law against Defendant’s acts of infringement and, unless it is enjoined from its infringement of the ’508 patent, Plaintiff will continue to suffer irreparable harm.

112. Plaintiff is entitled to recover from Defendant damages at least in an amount adequate to compensate for its infringement of the ’508 patent, which amount has yet to be determined, together with interest and costs fixed by the Court.

113. Plaintiff has complied with 35 U.S.C. § 287 with respect to the ’508 patent.

## COUNT VI – INFRINGEMENT OF U.S. PATENT NO. 8,199,637

114. Plaintiff incorporates by reference the allegations contained in paragraphs 1–113.

115. Defendant has made, used, offered for sale, sold, and/or imported products, including at least the Accused Products, that infringe, either literally or under the doctrine of equivalents, one or more claims of the ’637 patent in violation of 35 U.S.C. § 271(a), including claim 1. A comparison of claim 1 of the ’637 patent to the Accused Products is attached as Exhibit 12, which is incorporated herein by reference.

116. On information and belief, with knowledge of the ’637 patent, Defendant has actively induced and continues to induce the direct infringement of one or more claims of the ’637 patent, including claim 1, in violation of 35 U.S.C. § 271(b) by its customers and/or end users of their products, including at least the Accused Products, by selling, providing support for, providing instructions for use of, and/or otherwise encouraging its customers and/or end-users to directly

infringe, either literally and/or under the doctrine of equivalents, one or more claims of the ’637 patent, including claim 1, with the intent to encourage those customers and/or end-users to infringe the ’637 patent.

117. By way of example, on information and belief, Defendant actively induces infringement of the ’637 patent by encouraging, instructing, and aiding one or more persons in the United States, including but not limited to customers and end users who purchase, test, operate, and use Defendant’s products, including at least the Accused Products, to make, use, sell, and/or offer to sell Defendant’s products, including at least the Accused Products, in a manner that infringes at least one claim of the ’637 patent, including claim 1. For example, as described above, Defendant actively markets, advertises, offers for sale, and/or otherwise promotes its Accused Products on its website. Defendant further actively markets, advertises, offers for sale, and/or otherwise promotes its Accused Products by publishing and distributing data sheets, manuals, and guides for the Accused Products. Therein, Defendant describes and touts the use of the subject matter claimed in the ’637 patent.

118. On information and belief, with knowledge of the ’637 patent, Defendant also contributes to the infringement of one or more claims of the ’637 patent in violation of 35 U.S.C. § 271(c), including claim 1, by making, using, offering to sell or selling and/or importing a patented component or material constituting a material part of the invention, including at least the Accused Products, knowing the same to be especially made or especially adapted for use in an infringement and not a staple article or commodity of commerce suitable for substantial non- infringing use. This is evidenced by, among other things, the design, configuration, and functionality of Defendant’s Accused Products, which are especially made or especially adapted for use in an infringement of the ’637 patent when used for their normal and intended purpose. This is also evidenced by, among other things, Defendant’s informational and promotional materials described

above, which describe the normal use and intended purpose of the Accused Products and demonstrate that the Accused Products are especially made or especially adapted for a use that infringes the ’637 patent.

119. As a result of Defendant’s inducement of, and/or contribution to, infringement, its customers and/or end users made, used, sold, or offered for sale, and continue to make, use, sell, or offer to sell Defendant’s products, including the Accused Products, in ways that directly infringe one or more claims of the ’637 patent, including claim 1. On information and belief, Defendant had actual knowledge of its customers’ and/or end users’ direct infringement at least by virtue of its sales, instruction, and/or otherwise promotion of Defendant’s products, including the Accused Products, at least as of March 2017 when Orckit IP initiated discussions with Defendant about its patent portfolio, including the Asserted Patents, and no later than the filing of the Complaint in *Portsmouth Network Corporation v. Cisco Systems, Inc.*, Civil Action No. 2:23cv441, Dkt. 1 (E.D. Tex. September 26, 2023) and at least no later than the filing of this Complaint.

120. On information and belief, with knowledge of the ’637 patent, Defendant has willfully, deliberately, and intentionally infringed the ’637 patent, and continues to willfully, deliberately, and intentionally infringe the ’637 patent. On information and belief, Defendant had actual knowledge of the ’637 patent and Defendant’s infringement of the ’637 patent as set forth above. On information and belief, after acquiring that knowledge, Defendant directly and indirectly infringed the ’637 patent as set forth above. On information and belief, Defendant knew or should have known that its conduct amounted to infringement of the ’637 patent at least because Plaintiff notified Defendant of the ’637 patent and its infringement of the ’637 patent as set forth above.

121. On information and belief, Defendant will continue to infringe the ’637 patent unless and until it is enjoined by this Court. Defendant, by way of its infringing activities, has

caused and continues to cause Plaintiff to suffer damages in an amount to be determined, and has caused and is causing Plaintiff irreparable harm. Plaintiff has no adequate remedy at law against Defendant's acts of infringement and, unless it is enjoined from its infringement of the '637 patent, Plaintiff will continue to suffer irreparable harm.

122. Plaintiff is entitled to recover from Defendant damages at least in an amount adequate to compensate for its infringement of the '637 patent, which amount has yet to be determined, together with interest and costs fixed by the Court.

123. Plaintiff has complied with 35 U.S.C. § 287 with respect to the '637 patent.

## JURY DEMAND

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury on all issues triable as such.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that the Court enter judgment for Plaintiff and against Defendant and enter the following relief:

A. A judgment that Defendant infringes the following, Asserted Patents:

| |
|---|
| U.S. Patent No. 7,035,279 |
| U.S. Patent No. 7,154,899 |
| U.S. Patent No. 7,420,922 |
| U.S. Patent No. 7,626,930 |
| U.S. Patent No. 7,773,508 |
| U.S. Patent No. 8,199,637 |

B. A permanent injunction restraining and enjoining Defendant, its officers, partners, agents, servants, employees, parents, subsidiaries, divisions, affiliate corporations, joint ventures,

other related business entities and all other persons acting in concert, participation, or in privity with them, and their successors and assigns, from infringing the Asserted Patents;

C. An award of damages to Plaintiff arising from Defendant's past and continuing infringement up until the date Defendant is finally and permanently enjoined from further infringement, including compensatory damages;

D. A determination that Defendant's infringement of the Asserted Patents has been willful, and an award of treble damages to Plaintiff pursuant to 35 U.S.C. § 284;

E. A determination that this is an exceptional case and awarding Plaintiff's attorneys' fees pursuant to 35 U.S.C. § 285;

F. An order awarding Plaintiff costs and expenses in this action;

G. An order awarding Plaintiff pre- and post-judgment interest on its damages; and

H. An award to Plaintiff of such further relief at law or in equity as the Court deems just and proper.

Dated: September 3, 2026

Respectfully submitted,

By: /s/ Claire Abernathy Henry
James R. Nuttall (IL 6243585)
Katherine H. Tellez (IL 6303475)
Robert F. Kappers (IL 6313187)
Daniel F. Gelwicks (IL 6320663)
Sadaf Misbah (IL 6336405)
STEPTOE LLP
227 West Monroe Street, Suite 4700
Chicago, IL 60606
(312) 577-1300
E-mail: jnuttall@steptoe.com
E-Mail: ktellez@steptoe.com
E-mail: rkappers@steptoe.com
E-mail: dgelwicks@steptoe.com
E-mail: smisbah@steptoe.com

Michael C. Miller (NY 2066256) *admitted PHV*
STEPTOE LLP
1114 Avenue of the Americas

New York, NY 10036
(212) 506-3900
E-mail: mmiller@steptoe.com

Of Counsel:
MILLER FAIR HENRY PLLC
Claire Abernathy Henry
Texas State Bar No. 24053063
claire@millerfairhenry.com
1507 Bill Owens Pkwy
Longview, Texas 75604
Phone: (903) 757-6400
Fax: (903) 757-2323

*Attorneys for Plaintiff*
*Portsmouth Network Corporation*